Joseph E. COOPER, et al.

v.

SPRINGFIELD TERMINAL RAILWAY COMPANY.

Supreme Judicial Court of Maine.

Argued Sept. 24, 1993.

Decided Dec. 27, 1993.

---

Elizabeth A. Nadeau (orally), Highsaw, Mahoney & Clarke, P.A., Washington, DC, Craig J. Rancourt, Biddeford, for plaintiffs.

Anthony Derosby (orally), Charles Einsiedler, Jr., Pierce, Atwood, Scribner, Allen, Smith & Lancaster, Portland, for defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, COLLINS, RUDMAN and DANA, JJ.

ROBERTS, Justice.

This case arises out of a dispute resulting from defendant Springfield Terminal Railway Company's practice of requiring certain employees, among them the plaintiffs (Employees), to qualify for new positions by training without pay. The Employees brought suit, claiming that Springfield Terminal's actions violated 26 M.R.S.A. § 629 (1988), which prohibits uncompensated work as a condition of securing or retaining employment.[1] The Superior Court (Cumberland County, *Alexander, J.*) agreed and entered judgment in favor of the Employees, awarding them unpaid wages, liquidated damages, costs, and attorney fees pursuant to 26 M.R.S.A. § 626–A (1988).[2] On appeal, the Employees challenge the trial court's use of minimum wage to calculate the amount of wages owed to them. On cross-appeal, Springfield Terminal contends that (1) the Employees' claims are preempted by the Railway Labor Act, 45 U.S.C. §§ 151–188 (1986); (2) if the claims are not preempted, the Employees did not perform "work" within the meaning of section 629; and (3) the penalty provisions contained in section 626–A do not apply to violations of section 629. Although we modify the trial court's calculation of wages due, we affirm the judgment in all other respects.

■ All of the Employees formerly worked for rail carriers whose operations were transferred to Springfield Terminal in 1987. Pursuant to the collective bargaining agreement, they each "bid" on a position held by a Springfield Terminal worker. Since they were not already qualified to perform the jobs, however, Springfield Terminal re-

quired them to train for ten days without pay. "Training" consisted of shadowing the incumbent worker—first observing, then gradually taking over the job functions. After fulfilling this requirement, the Employees requested compensation for the time spent in training. This action followed Springfield Terminal's denial of compensation, and resulted in a summary judgment in favor of the Employees. We review the court's decision for errors of law, viewing the evidence in the light most favorable to the party against whom the summary judgment was granted. *Chasse v. Mazerolle*, 622 A.2d 1180, 1182 (Me.1993).

■ Springfield Terminal first contends that the Railway Labor Act, 45 U.S.C. §§ 151–188, preempts the Employees' claims. We disagree. The Act is not concerned with regulating wages, hours, or working conditions, but rather establishes the procedure by which carriers and employees can reach agreement on those terms. *Terminal R.R. Ass'n v. Brotherhood of R.R. Trainmen*, 318 U.S. 1, 6, 63 S.Ct. 420, 423, 87 L.Ed. 571 (1943). Like similar federal labor statutes, it does not preempt state "minimum standards legislation" that regulates working conditions. *Id.* at 6–7, 63 S.Ct. at 423. *See also Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 757 n. 32, 105 S.Ct. 2380, 2398 n. 32, 85 L.Ed.2d 728 (1985).

Section 629 provides the same type of substantive protection as other statutes imposing minimum standards. *See Barrentine v. Arkansas–Best Freight System*, 450 U.S. 728, 101 S.Ct. 1437, 67 L.Ed.2d 641 (1981) (requiring minimum wage and overtime pay); *Metropolitan Life*, 471 U.S. at 724, 105 S.Ct. at 2380 (requiring that health insurance include mental health care benefits); *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 107 S.Ct.

---

1. Section 629 provides in pertinent part that "[n]o person, firm or corporation shall require or permit any person as a condition of securing or retaining employment to work without monetary compensation...."

2. Section 626–A provides as follows:

Whoever violates any of the provisions of sections 621 to 623 or section 626, 628 or 629 shall be subject to a forfeiture of not less than $100 nor more than $500 for each violation.

Any employer shall be liable to the employee or employees for the amount of unpaid wages. Upon a judgment being rendered in favor of any employee or employees, in any action brought to recover unpaid wages under this subchapter, such judgment shall include, in addition to the unpaid wages adjudged to be due, a reasonable rate of interest, an additional amount equal to twice the amount of such wages as liquidated damages and costs of suit including a reasonable attorney's fee.

2211, 96 L.Ed.2d 1 (1987) (requiring severance pay for employees whose workplace was relocated or shut down). *See also Beckwith v. United Parcel Serv.*, 889 F.2d 344 (1st Cir.1989) (finding that section 629 is minimum standards legislation and is not preempted by the National Labor Relations Act). The statute does not interfere with the collective bargaining process, but leaves carriers and employees free to bargain over the terms and conditions of employment—albeit with a limited "range of possible solutions." *Beckwith*, 889 F.2d at 348. The mere fact that section 629 grants employees a substantive benefit for which they would otherwise have had to bargain, however, does not suffice to preempt the statute. *Fort Halifax*, 482 U.S. at 21–22, 107 S.Ct. at 2222–2223.

■ Statutes that impose minimum labor standards without affecting collective bargaining activity are not waivable in a collective bargaining agreement. *Beckwith v. United Parcel Serv.*, 703 F.Supp. 138, 144–45 (D.Me.1988), *aff'd*, 889 F.2d 344 (1st Cir. 1989). Moreover, when a term contained in a collective bargaining agreement conflicts with minimum standards legislation, the former must yield. *See Challenger Caribbean Corp. v. Union General de Trabajadores de Puerto Rico*, 903 F.2d 857, 867 (1st Cir.1990). Thus, Springfield Terminal cannot rely on the agreement as justification for violating section 629.

■ Springfield Terminal next challenges the trial court's conclusion that the Employees performed "work" within the meaning of section 629, inviting us to adopt a definition of work that would exclude tasks performed in the course of training programs. We decline the invitation. Section 629 is designed to protect all persons in Maine from being forced to work without pay. The language used in section 629, forbidding "any person" from being required or permitted to work "as a condition of securing ... employment," is universal and plainly connotes coverage for trainees seeking to obtain a position.

When, as here, the term is undefined, what constitutes work is "a uniquely factual determination" to be made after considering the circumstances of each case. *Crook v. Russell*, 532 A.2d 1351, 1354 n. 5, 1355 (Me.1987).

During the course of their training, the Employees actually performed many of the job functions without close, or in some cases any, supervision. The court found that some of their activities benefited Springfield Terminal. In these circumstances, the court could find that the Employees performed work, as the term is understood in "common and approved usage," within the meaning of section 629. *See Goodine v. State*, 468 A.2d 1002, 1004 (Me.1983).

■ Springfield Terminal also contends that even if the Employees fall within the purview of section 629, the trial court erred in awarding unpaid wages, liquidated damages, costs and attorney fees under the penalty provisions of section 626–A. Again, we disagree. The first paragraph of section 626–A explicitly states that it is applicable to violations of section 629, while the second paragraph provides for the aforementioned penalties in any action brought under the subchapter of which section 629 is a part. Additionally, the second paragraph specifically makes employers liable for "unpaid wages," which is precisely what is owing when an employer does not pay an employee for work. To read section 626–A otherwise and apply only the civil forfeiture provisions contained in the first paragraph to violations of the portion of section 629 at issue here would strip section 629 of its effectiveness as a deterrent.

■ The final issue is raised by the Employees, who claim that the trial court erred in using the state minimum wage rate, rather than the wage rate contained in the collective bargaining agreement, to calculate the wages and liquidated damages owed to them under section 626–A. The court did so based on an assumption that referring to the agreement to ascertain the Employees' rate of pay would defeat its jurisdiction over the entire case. The court's assumption is unwarranted in two respects.

First, when the rate of pay contained in a collective bargaining agreement is used to determine the amount of damages, "[a]lthough federal law would govern the interpretation of the agreement to determine the proper damages, the underlying state-law

claim, not otherwise preempted, would stand." *Lingle v. Norge Div., Magic Chef,* 486 U.S. 399, 413 n. 12, 108 S.Ct. 1877, 1885 n. 12, 100 L.Ed.2d 410 (1988). Second, federal law preempts the damages portion of a case only when interpretation of the agreement is necessary to fix the amount of damages. Mere reference to the agreement to supply the correct wage rate, which is all that is required here, is not enough for preemption. *Baldracchi v. Pratt & Whitney Aircraft Div.,* 814 F.2d 102, 107 (2d Cir. 1987), *cert. denied,* 486 U.S. 1054, 108 S.Ct. 2819, 100 L.Ed.2d 920 (1988), *cited in Lingle,* 486 U.S. at 413 n. 12, 108 S.Ct. at 1885 n. 12.

Moreover, using the state minimum wage rate unfairly penalizes the Employees for their status as union workers. Using the trial court's approach, nonunion workers performing the same tasks would recover at their full contract rate, whereas the Employees would receive less than one third of the $11.90 per hour set forth in their contract. *See* 26 M.R.S.A. § 664 (Supp.1993) (minimum wage rate of $3.75 per hour in 1989). Applying the plain meaning of "unpaid wages" in section 626–A, we conclude that the Employees are entitled to recover at their contract rate.

The entry is:

Judgment affirmed as to liability and vacated as to damages.

Remanded with direction to assess wages and liquidated damages at the rate of $11.90 per hour, plus attorney fees and costs.

All concurring.